# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENNETH M. BARR,            )
                                       )

                 **Plaintiff,**       )

                                       )    **CIVIL ACTION**

**v.**                                   )

                                       )    **No. 12-2114-JWL**

**CAROLYN W. COLVIN,[1]**        )

**Acting Commissioner of Social Security,**  )

                                       )

               **Defendant.**     )

_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the evaluation of Dr. Day's medical opinion and in the narrative discussion of the residual functional capacity (RFC) assessment as it relates to medical opinions, the court ORDERS that the decision of the Commissioner shall be

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

## I.    Background

Plaintiff applied for both SSD and SSI benefits on May 4, 2007,[2] alleging disability beginning April 1, 2004.  (R. 22, 230-42).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 22) (citing Exs. 1A through 7A, 1B, and 4B through 6B) (R. 87-98, 102-10).  Plaintiff's request was granted, and in due course Plaintiff appeared with counsel for a hearing before ALJ Debra Bice on December 9, 2009.  (R. 22, 41-42).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 22, 41-85).  At the conclusion of the hearing, the ALJ informed Plaintiff that another psychological evaluation was necessary and would be ordered.  (R. 22, 83-84).  Plaintiff attended the evaluation, and a report of that evaluation was prepared and submitted into the record.  (R. 22, 348-50, 750-58).  Plaintiff did not object to admission of the report, and after considering the report the ALJ issued her decision on April 30, 2010.[3]  (R. 22-35).

_____

[2]The decision reflects a protective filing date of April 10, 2007, and neither party disputes that date.  (R. 22).

[3]Because the Commissioner's decision was issued on April 30, 2010, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

In her decision, the ALJ found that Plaintiff has a combination of severe impairments including status post right shoulder rotator cuff repair surgery and major depressive disorder, but that his impairments do not meet or medically equal the severity of any listed impairment. (R. 25-26). She found that Plaintiff has the RFC for a range of light work limited by the ability to only occasionally bend and stoop, and the inability to reach overhead with his dominant right arm. (R. 26). Mentally, she determined Plaintiff is capable of only simple, routine, repetitive tasks which are concrete and tangible, and that Plaintiff is limited to only brief, superficial interaction with co-workers and the public. Id.

In her RFC assessment, the ALJ summarized the record evidence, determined that Plaintiff's allegations of symptoms resulting from his impairments are not credible, and discussed and accorded weight to certain medical opinions contained in the record. (R. 26-32). She concluded that the RFC she had assessed was supported by the record evidence. (R. 32). Based upon the RFC assessed, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Consequently, she considered the vocational factors of age, education, and work experience, and determined that there are jobs that exist in significant numbers in the economy that Plaintiff can perform, represented by jobs such as a housekeeper, a microfilm processor, and an electrical equipment sub-assembler. (R. 33-34). Therefore, she determined that Plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 34-35).

Plaintiff sought Appeals Council review of the ALJ's decision and submitted a letter brief identifying the errors allegedly made in the decision. (R. 227-29). The Appeals Council received the letter brief, made it a part of the administrative record, and considered it in deciding whether to review the decision. (R. 1-5). Nevertheless, the Council determined that the letter brief does not provide a basis to change the ALJ's decision, found no reason under the rules of the Social Security Administration (SSA) to review the decision, and denied the request for review. (R. 1-2). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

**Legal Standard**

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if he can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084. The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's RFC. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to accord adequate weight to the medical opinion of her treating psychiatrist, Dr. Day; failed to consider the lay opinion of an SSA employee who completed Plaintiff's "Disability Report" over the telephone, or the lay opinion of Plaintiff's wife presented in a third party "Daily Activities Questionnaire;" failed properly to consider the effects of Plaintiff's obesity; and erroneously relied upon vocational expert testimony which conflicts with the Dictionary of Occupational Titles. (DOT). He also claims the RFC assessed by the ALJ is not supported by substantial record evidence because the ALJ did not include a narrative discussion which explained how the RFC was derived from the medical opinions of record, and which did not sufficiently resolve ambiguities between the medical opinions or explain the relative weight accorded each medical opinion.

The Commissioner argues that although Plaintiff was not actually diagnosed with obesity, the ALJ properly determined it was not a severe impairment in the circumstances, and properly considered it in assessing RFC. She argues that the ALJ provided a narrative discussion which properly evaluated the credibility of Plaintiff's allegations and properly evaluated the medical opinions of record to determine that Plaintiff can perform a wide range of light work. Finally, she argues that the ALJ properly considered the third party lay opinions, and properly relied upon the vocational expert testimony.

The court finds remand is necessary because of error in the ALJ's evaluation of Dr. Day's opinion and error in the relative weighing of the medical opinions. Plaintiff

may make her remaining arguments regarding obesity, third party lay opinions, and the vocational expert testimony before the Commissioner on remand.

## III.    Discussion

Plaintiff acknowledges the ALJ's finding that Dr. Day's opinion was not controlling, but that it was considered. (Pl. Br. 17) (citing R. 32). He argues that this is an insufficient finding because the ALJ did not identify the weight she actually accorded to Dr. Day's opinion. Id. Moreover, he claims that the reasons given by the ALJ for discounting Dr. Day's opinion are not legitimate, and that Dr. Day's opinion is supported by substantial record evidence, including the opinions of other acceptable medical sources. (Pl. 18-21). Finally, he asserts that Dr. Day's opinion is worthy of controlling weight. (R. 21-22). With regard to the remaining medical opinions, Plaintiff claims that the ALJ's evaluation of the medical opinions is erroneous and unreviewable because the ALJ did not "connect the dots as required by S.S.R. [(Soc. Sec. Ruling (SSR)] 96-8p," (Pl. Br. 33) (citing Kency v. Barnhart, Civ. A. No. 03-1190-MLB, 2004 WL 5542829, *4 (D. Kan. Nov. 16, 2004)), and it is impossible to tell which parts of which opinions were relied upon by the ALJ (and why) in reaching the RFC assessed. (Pl. Br. 30-33).

The Commissioner argues that the ALJ properly considered the medical opinions, and properly discounted Dr. Day's medical opinion. (Comm'r Br. 10-18). She argues that the ALJ provided eight pages of narrative discussion explaining her RFC assessment, and that a pinpoint citation to record evidence is not required for each RFC limitation assessed. Id. at 10 (citing Thongleuth v. Astrue, Case No. 10-1011-JWL, 2011 WL

1303374, *13 (D. Kan. Apr. 4, 2011).  She points to record evidence which in her view supports the ALJ's evaluation of the medical opinions.  (Comm'r Br. 11-18).  The court will first explain the error in the ALJ's evaluation of Dr. Day's treating source opinion, and will then explain why remand is necessary for a proper explanation of the relative weighing of all the medical opinions.

## A.    Standard for Evaluating Medical Opinions

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is [(1)] well-supported by medically acceptable clinical and laboratory diagnostic techniques and is [(2)] not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must also confirm that the opinion is "not inconsistent" with other "substantial evidence" in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

SSR 96-2p, cited by the court in <u>Watkins</u>, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) (Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); <u>see also</u>, <u>Wall</u>, 561 F.3d at 1052; <u>Gossett</u>, 862 F.2d at 804.  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2010).  The threshold for denying controlling weight is low.  Inconsistent evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion."  <u>Id.</u>

If a treating source opinion is not given controlling weight, the inquiry does not end.  <u>Watkins</u>, 350 F.3d at 1300.  Such an opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  <u>Id.</u>  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),

416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

Moreover, opinions from any medical source must not be ignored, and if a treating source opinion is not given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with the regulatory factors. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012). After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Watkins, 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2012). The ruling includes narrative discussion requirements for the RFC assessment. Id. at 149-50. The narrative discussion must include consideration of medical opinions regarding plaintiff's capabilities, and if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. Id. at 150.

**B.** **The ALJ's Evaluation of Dr. Day's Opinion**

In her evaluation of Dr. Day's opinion, the ALJ began by summarizing the opinion, noting that Dr. Day found no limitations in three of twenty mental activities, "slight" limitations in eight of the activities, "moderate" limitations in six of the activities, "marked" limitations in three of the activities, and "extreme" limitations in none of the activities. (R. 31) (citing Ex. 18F (R. 689-91)). She also noted that Dr. Day opined that Plaintiff met the listing criteria for "affective disorders," Listing 12.04. Id. (citing Ex. 19F (R. 692-99)). The ALJ then explained her reasons for discounting Dr. Day's opinion:

> Dr. Day is a treating psychiatrist; however, the claimant did not begin treatment at The Wyandot Center until December 12, 2008, 4 1/2 years after the alleged disability onset date of April, 2004. Even Dr. Day does not suggest the current level of disability has existed since April, 2004. However, as noted above, he opines a January 2007 onset. Unfortunately, this conflicts with the facts such as the claimant did not begin treatment at The Wyandot Center until December 2008, almost 2 years after the estimated onset date. Furthermore, as also noted above, when the claimant was first seen at The Wyandot Center, he asserted that his symptoms had been present about one year, i.e., December 2007, not January 2007. In October 2009, the psychiatrist cites distractibility as one of the claimant's symptoms. However, in December 2008, distractibility is not noted. Dr. Day asserts that the claimant is influenced by pain. However, Dr. Day is treating the claimant for mental problems, not physical. There is no indication in the record that the psychiatrist has access to the claimant's medical records as to his musculoskeletal condition. While Dr. Day denies any substance abuse diagnosis, as discussed in more detail below, the December 2008 intake record from The Wyandot Center contains statements by the claimant that he had been drinking a 12-pack of beer on weekends with mixed drinks up until "recently." The claimant told Dr. Karayusuf about use/abuse of vodka, crack cocaine, and marijuana. Clinic notes from The Wyandot Center reflect an initial description of the depressive disorder as "moderate" and contain numerous statements that the medication was very helpful. Dr. Day has never hospitalized the claimant for any mental impairment; there have been few changes as to the types and dosage of medication; and the contemporaneous clinic notes do not suggest any decompensation of extended duration. The intake notes do not support

the allegations of psychomotor agitation/retardation and suggest that most of the other cited symptoms were present at a lesser degree. On September 22, 2009, two weeks before Dr. Day completed the two forms, the claimant "appeared alert and cheerful." He was "calm and pleasant" (Ex. 20F [(R. 700-49)]). The opinion is contradicted by both the clinical notes from The Wyandot Center and the examinations by Dr. Karayusuf and Dr. Schlosberg. The opinion is inconsistent with the claimant's daily activities. The opinion was not found to be controlling, but was considered.

(R. 31-32).

Thus, the ALJ discounted Dr. Day's opinion because: (1) Plaintiff first sought mental health treatment four and a half years after the alleged onset of his disability; (2) Dr. Day opined regarding an onset of limitations almost two years before he first began treating Plaintiff, despite Plaintiff's assertion when he sought treatment that his symptoms had been present for only one year; (3) Dr. Day included distractibility as a symptoms despite the fact his intake evaluation did not include distractibility; (4) Dr. Day stated that Plaintiff was influenced by pain but he treated Plaintiff for mental impairments, and there is no indication he had access to Plaintiff's treatment records regarding his musculoskeletal system; (5) Dr. Day indicated that Plaintiff did not have a substance abuse diagnosis, whereas his intake evaluation indicated a 12-pack of beer on weekends, weekend use of mixed or straight drinks, and weekend use of cocaine or crack within the last year, see (R. 32) (Wyandot intake evaluation shows Plaintiff admitted to weekend use of cocaine/crack) (citing Ex. 20F (R. 746)); (6) the treatment notes indicate only "moderate" depressive disorder; (7) the treatment notes do not record any decompensation, there have been few adjustments in medication, and Dr. Day has never

suggested hospitalization for mental problems; (8) the intake evaluation does not reflect psychomotor agitation or retardation, and suggests most symptoms are present to a lesser degree than suggested by Dr. Day's reports; (9) the treatment notes from shortly before Dr. Day formulated his opinion show that Plaintiff was "alert and cheerful," and "calm and pleasant;" (10) Dr. Day's opinion is contradicted by the examinations of Dr. Karayusuf and Dr. Schlosberg; and (11) the opinion is inconsistent with Plaintiff's daily activities.

### C.        Analysis of Dr. Day's Opinion

The record supports the ALJ's determination not to accord controlling weight to Dr. Day's opinion.  As noted above, the threshold for denying controlling weight is low, and the ALJ correctly found Dr. Day's opinion is inconsistent, at least, with Dr. Schlosberg's opinion.  Dr. Schlosberg opined that Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public is not affected by his impairments.  (R. 753).  However, Dr. Day opined that Plaintiff is markedly limited in the ability to interact appropriately with the general public, moderately limited in the ability to accept instruction and respond appropriately to criticism from supervisors, and markedly limited in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  (R. 690).  This is an inconsistency with other substantial record evidence sufficient to preclude assigning controlling weight to Dr. Day's opinion.

Plaintiff asserts that remand is necessary because the ALJ did not identify the weight she actually accorded to Dr. Day's opinion because she merely stated that the opinion was not controlling but that it was considered. The court does not agree. An ALJ's decision must be "sufficiently articulated so that it is capable of meaningful review." Spicer v. Barnhart, 64 F. App'x 173, 177-78 (10th Cir. 2003). The ALJ must provide reasons for the weight she accords a medical opinion, and if she rejects a treating source opinion, she must provide "specific, legitimate reasons" for doing so. Watkins, 350 F.3d at 1301. As was done with most medical opinions in this case, ALJs frequently describe the weight accorded to medical opinions by using such terms as "little weight," "substantial weight," "no weight," "some weight," "significant weight," or "controlling weight." Other than the requirement that an ALJ must consider whether the opinion of a treating source is worthy of controlling weight, and must indicate as much in her decision, the court is aware of no authority which requires that an ALJ use particular terms to specify the weight accorded to medical opinions. What is required is that she provide reasons for the weight accorded and that her decision be capable of meaningful review.

While it would have been helpful in this case if the ALJ had specifically stated that she rejected or accorded no weight to Dr. Day's opinion, that omission is not error requiring remand, because in context the decision makes clear that she provided no weight to the opinion, she provided specific reasons for doing so, and that determination is capable of meaningful judicial review--a review which the court now undertakes.

Remand is necessary because the ALJ erred in reason (4) for discounting Dr. Day's opinion. The import of that reason is that Dr. Day is a psychiatrist who was treating Plaintiff for mental problems, and who did not have access to treatment records relating to Plaintiff's physical problems. Therefore, Dr. Day is unqualified to render an opinion regarding whether Plaintiff is "influenced by pain." Even assuming that Dr. Day did not have access to treatment records relating to Plaintiff's physical problems, and forgetting that Dr. Day is a psychiatrist who is a medical doctor qualified to treat physical problems, the record will not support reason (4). Dr. Day's reference in this regard relates to his assertion that the limitations he opined in the twenty mental activities in his Mental Residual Functional Capacity Assessment form are confirmed by his clinical observations that Plaintiff is "irritable, distractible, [and] influenced by pain." (R. 690). He was clearly referring to mental limitations which, in his opinion as a psychiatrist, are influenced by physical pain. Mental deficiencies resulting in large part from the pain caused by physical impairments do not make the deficiencies any less mental, or any less within the competence of a psychiatrist, or even a psychologist, to evaluate.

To the extent the ALJ may be reasoning that a psychiatrist is unable to directly measure the severity or effect of pain felt by a patient, the court notes that a medical doctor dealing strictly with physical problems is at the same disadvantage. As a medical doctor must evaluate a patient's limitations due to pain based upon his or her experience with the severity of the patient's physical condition, and based upon clinical evaluation of the symptoms, signs, and laboratory findings in the particular case, so must a psychiatrist

16

evaluate a patient's limitations in understanding and memory, in sustained concentration and persistence, in social interaction, and in adaptation, based upon experience with the severity of the patient's mental presentation, and based upon clinical evaluation of the psychological symptoms, signs, and findings in the particular case. That is what Dr. Day's report reveals he did in the case at hand. That Plaintiff's mental presentation and the psychological symptoms, signs, and findings are the result of pain caused by physical impairments do not negate Dr. Day's ability to evaluate them as a psychiatrist.

The court is aware of no authority, medical or legal which is to a different effect than discussed above, and neither the ALJ in her decision nor the Commissioner in her Brief cites to any such authority. Moreover, the American Psychiatric Association's publication, the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, recognizes that mental disorders may include mental limitations resulting from general medical conditions, and specifically recognizes that such effects may include depression caused by pain resulting from a general medical condition. <u>E.g.</u>, Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) 401-05 (4th ed. text revision 2000) (Mood Disorder Due to a General Medical Condition). Reason (4) cannot stand.

Reason (10), the relative weight accorded to the opinions of Dr. Day, Dr. Karayusuf, and Dr. Schlosberg, will be evaluated hereinafter with the court's consideration of the ALJ's relative weighing of all of the medical opinions. As to the remaining reasons given to discount Dr. Day's opinion, Plaintiff does not argue that they

are false on their face or that they are not supported by the record, but rather argues that they could be weighed differently than the ALJ weighed them. For example, Plaintiff acknowledges that distractibility was not noted on The Wyandot Center intake evaluation, but he argues that the intake evaluation did note diminished attention/ concentration and that "[d]iminished attention . . . is the same as distractibility." (Pl. Br. 19). While the court recognizes that the ALJ might legitimately have reached a different conclusion in this regard, it is not the court's prerogative to substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172. Moreover, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted).

As the ALJ noted, the intake evaluation for Wyandot indicates that Plaintiff's attention/ concentration was mildly diminished, whereas the associated block on that evaluation form for "distractible" was left blank. (R. 747). It was not error for the ALJ to conclude that the intake evaluation reveals that Plaintiff had mildly diminished concentration, but that he was not found to be distractible. The record evidence supports the ALJ's findings with regard to reasons (1) - (3), reasons (5) - (9) and reason (11). On

remand, Plaintiff may argue that the ALJ should weigh those reasons differently, but the court does not find error in the reasons given.

### D. The ALJ's Relative Weighing of the Medical Opinions

The ALJ provided a summary of each medical opinion in this case and an evaluation and discussion of the weight accorded to that opinion. (R. 30-32). The ALJ noted that Dr. Putnam was a treating surgeon who treated Plaintiff after his automobile accident in July 2006, and eventually performed surgery on Plaintiff's right shoulder in February 2007. (R. 30). She noted that Dr. Putnam released Plaintiff to return to work in October 2009 without sitting, standing or walking limitations, without limitations on the workday or workweek, and without emotional limitations, but with the only restriction given being on use of the right upper extremity. Id.; see also, (R. 359) (No use of right arm). She gave this opinion "great weight" for the time "from the July 2006 automobile accident through at least the February 2007 surgery," and noted that the opinion does not support Plaintiff's report of "intractable pain due to the July 2006 accident." (R. 30).

The ALJ noted that Dr. Phibbs is a non-examining state agency medical consultant who opined that within twelve months of the July 2006 accident Plaintiff regained the ability to perform a wide range of medium work, and she accorded that opinion "some weight." Id. She recognized that Dr. Grant had affirmed Dr. Phibbs's opinion, and she also accorded Dr. Grant's opinion "some weight." (R. 31).

The ALJ noted that Dr. Karayusuf was a non-treating psychiatrist who examined Plaintiff in November 2007 and prepared a report in which he opined that Plaintiff was

restricted to brief, superficial, infrequent interactions with co-workers, supervisors, and the public. (R. 30). She gave this opinion "some weight." Id. The ALJ also gave "some weight" to the opinion of Dr. Shipley, a state agency non-examining psychologist, that Plaintiff did not have a severe mental impairment. (R. 31). She acknowledged the opinion of Dr. McIntosh, a medical doctor who provided chiropractic and medical treatment to Plaintiff, that Plaintiff could expect intermittent exacerbations in his shoulder and spine for a long time to come, and in the distant future could expect advancement of degenerative changes. Id. She found that Dr. McIntosh's opinion contradicts Plaintiff's allegations of symptoms relevant to the 2008 automobile accident and would not preclude a wide range of light work, but she did not specify the weight accorded that opinion. Id.

The ALJ's consideration of Dr. Day's opinion is quoted and discussed above. (R. 31-32); see also supra 11-13. Finally, the ALJ discussed Dr. Schlosberg's opinion, noting that Dr. Schlosberg found "mild" limitations in four subareas and "moderate" limitations in two subareas of Plaintiff's ability to understand, remember, and carry out instructions, but that Dr. Schlosberg found no limitations in Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, or in Plaintiff's other mental capabilities. (R. 32). She accorded this opinion "great weight." Id.

Although the ALJ specifically stated the weight she accorded to most medical opinions in the record, the court is unable to discern the relative weight she accorded the opinions or the reasons for that weight. The court discerns multiple ambiguities in the

ALJ's weighing of the medical opinions for which it finds little or no resolution either explicitly or implicitly in the decision.

The ALJ accorded "great weight" to Dr. Putnam's opinion, but Dr. Putnam opined that Plaintiff was to make <u>no use</u> of his right arm when he was released to return to work (R. 359), whereas the ALJ restricted Plaintiff only from <u>reaching overhead</u> with the right arm. (R. 26). The ALJ accorded "some weight" to Dr. Phibbs's opinion that Plaintiff could perform a wide range of <u>medium work</u> (R. 30), whereas she found that Plaintiff could perform only a range of <u>light work</u> with significant additional limitations. (R. 26). The ALJ accorded "some weight" to Dr. Karayusuf's opinion that Plaintiff was limited to brief, superficial, infrequent interactions with co-workers, <u>supervisors</u>, and the public (R. 30), whereas she found no limitation on his interactions with <u>supervisors</u>. (R. 26). The ALJ accorded "some weight" to Dr. Shipley's opinion that Plaintiff <u>does not have</u> a severe mental impairment (R. 31), whereas she found that Plaintiff <u>has</u> a severe major depressive disorder (R. 25) and that this mental impairment restricts Plaintiff to work which must consist of only simple, routine, repetitive tasks which are concrete and tangible, and limits Plaintiff to only brief, superficial interaction with co-workers and the public. (R. 26). She acknowledged that Dr. McIntosh found that Plaintiff would have intermittent exacerbations of soreness and stiffness at the shoulder and spinal region for an extended period of time (R. 31), but she did not accord specific weight to that opinion, and did not explain how she determined that those exacerbations would not preclude work at the RFC assessed. Finally, she accorded "great weight" to Dr. Schlosberg's

opinion (R. 32), but did not acknowledge his narrative explanation that emotional symptoms are interfering with Plaintiff's ability to cope with everyday stresses, that Plaintiff's capacity for concentration may not be adequate for focusing on simple tasks over a regular workday, that his ability to work with others without distraction or interference from psychological symptoms is likely compromised (R. 757), and that Plaintiff's depression may keep him from keeping a regular work schedule. (R. 758).

Each of these findings creates an ambiguity for which the court is unable to discern a resolution in the ALJ's decision. The court simply cannot discern how the ALJ weighed the medical opinions and resolved the ambiguities presented. Plaintiff argues, "If the ALJ is to rely on an opinion, she must utilize the entire opinion." (Pl. Br. 32) (citing Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004); Lee v. Barnhart, 117 F. App'x 674, 678 n.2 (10th Cir. 2004)). However, that is not the law.

To be sure, the cases cited by Plaintiff stand for the proposition that an ALJ may not pick and chose within a medical report or among medical reports using portions favorable to her position while ignoring the rest. However, an ALJ is not required to either utilize or reject each opinion as a unit. Rather, she may not ignore portions of any opinion. She is required to provide reasons for rejecting an opinion or portions of that opinion. In none of the cases cited by Plaintiff was the Commissioner instructed to accept or reject each opinion as a whole. In Haga, the case was remanded for the ALJ to explain

why he adopted some of Dr. Rawlings's restrictions but not others.  <u>Haga</u>, 482 F.3d at 1208.  In <u>Robinson</u>, the error was that the "ALJ failed to provide any explanation of how he assessed the weight of the treating physician's opinion."  366 F.3d at 1083.  The other two cases cited merely state the proposition that an ALJ may not use portions of medical reports while ignoring other portions.

Nonetheless, in this case the court is unable to discern the path the ALJ used to assign relative weight to the medical opinions or to arrive at the RFC limitations assessed.  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) (although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned") (quoting, respectively, <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947); and <u>Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc.</u>, 419 U.S. 281, 286 (1974)).  Therefore, remand is necessary for the Commissioner to weigh Dr. Day's opinion properly and to explain the relative weight accorded to each medical opinion, and the reasons for that weight.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

Dated this 29<u>th</u> day of March 2013, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum          </u>
**John W. Lungstrum**
**United States District Judge**